**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD LEGRAND,** | : | **Civil No. 3:12-CV-238** |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PPL SUSQUEHANNA LLC,** | : | |
| | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

In this lawsuit, Donald LeGrand ("LeGrand" or "the plaintiff") alleges that his

former employer, PPL Susquehanna LLC ("PPLS" or "the defendant") terminated his

employment unlawfully, in violation of the Age Discrimination in Employment Act,

29 U.S.C. §§ 621 et seq. ("ADEA") and the Pennsylvania Human Relations Act, 43

Pa. Cons. Stat. Ann. §§ 951 et seq.  ("PHRA").  Specifically, LeGrand claims that

PPLS removed him from a licensing class that LeGrand was admittedly failing, and

prevented him from enrolling in a subsequent session of the class, which effectively

precluded him from obtaining a license necessary to his work and leading to the

eventual termination of his employment on June 21, 2010.  LeGrand has offered

evidence that when he was informed he would not be permitted to enroll in the new

licensing class, he was specifically told by a corporate decision-maker that he would not be successful even if he had been because "training is a young man's game." As discussed below, LeGrand also identified other instances where his age was the subject of potentially relevant commentary by at least one other member of the board that was charged with reviewing his performance, and which issued recommendations that he be prevented from continuing in his efforts to obtain the license necessary to his employment.

Despite the undisputed fact that he was failing the licensing class that was crucial to his employment, LeGrand claims that PPLS discriminated against him on the basis of age when it elected to discontinue his participation in the class, and to prevent him from enrolling in a subsequent class, while allegedly alluding to his age. PPLS denies this charge, and defends its decision to terminate LeGrand's employment for legitimate reasons.

PPLS has moved for summary judgment, and the motion is fully briefed and has been referred to the undersigned for purposes of preparing a report and recommendation. For the reasons that follow, we find this to be a very close case, but we ultimately conclude that the record contains sufficient direct evidence that, if believed, could persuade a fact finder that the plaintiff's age was a critical factor in the decision to disallow him to participate in LOC 24, and, therefore, to prevent him

from continuing in his position as a Unit Supervisor, leading to his eventual termination.  Because this disputed fact issue remains unresolved and central to the case, it is not appropriate to resolve the matter at the summary judgment stage.

## II.   FACTUAL BACKGROUND

LeGrand was hired by PPLS on December 31, 2008, when he was 55 years old. LeGrand was hired has a Unit Supervisor, and his hire was expressly contingent on his successful completion of the requirements needed to obtain a Senior Reactor Operator ("SRO") license.

An SRO is licensed to manipulate the controls of a nuclear reactor and to direct others to manipulate controls.  An SRO is typically the senior manager in the plant control room, who is ultimately responsible for directing the operation of the nuclear reactor.  SRO licenses are awarded to PPLS employees by the United States Nuclear Regulatory Commission ("NRC") following the successful completion of a Licensed Operator Class ("LOC").  An SRO candidate must also earn passing grades on the NRC's Nuclear Generic Fundamentals Examination and Final Examination in order to obtain an SRO license.  (Doc. 28-1, Def. Statement of Undisputed Facts ("Def. SMF") ¶¶ 1-6.)  LeGrand understood that his employment was conditioned upon securing an SRO license, and that his failure to do so would result in the loss of his position as a Unit Supervisor.  (Id. ¶ 12-13.)

3

LeGrand enrolled in LOC 23 in June 2009, after he had been employed on-site for six months.[1]  (Id. ¶ 15.)  At this time, LeGrand was 55 years old.  (Id. ¶ 18.) Around this time, LOC 23 had 13 license candidates, including LeGrand.  (Id. ¶ 19.) Of those enrolled in LOC 23, five candidates were in their 40s and four candidates, including LeGrand, were in their 50s.  (Id. ¶ 20.)  The Nuclear Generic Fundamentals phase of LOC 23 consisted of three separate modules, followed by an internal Final Examination, and then by the NRC's Generic Fundamentals Examination.  (Id. ¶ 21.)

On September 9, 2009, LeGrand took the NRC's Nuclear Generic Fundamentals Examination and received a failing grade.[2]  (Id. ¶ 22.)  Approximately two weeks later, PPLS convened a meeting of the Performance Review Board to review LeGrand's test results, and LeGrand appeared before the Board at that time. (Id. ¶ 25.)  When a student's academic performance raises concerns or warrants special attention, a Performance Review Board or a Training Review Board is convened to determine whether the student's performance deficiencies result from

---

[1] Each LOC is sequentially numbered and lasts approximately 18 months. (Def. SMF ¶¶ 16-17.)

[2] A candidate needs to earn at least 80% on this examination to pass. LeGrand received a 76%, although it appears his grade may later have been changed to 78%.  (Pl. Answer to Def. SMF ¶ 22.)  Regardless of this change, it is undisputed that LeGrand failed the examination.  (Id. ¶ 22-24.)

4

systemic issues with the training program, individualized issues with the particular student, or both.  (Id. ¶¶ 27-28.)

The Program Review Board was chaired by Art Fitch, Manager of Nuclear Training, who is two years older than LeGrand.  (Id. ¶¶ 29-30.)  The remainder of the Board was composed of Tom Iliadis (General Manager, Operations), Dave Walsh (Assistant Operations Manager, Shift), Ron Fry (Supervisor, Operations Training), and Chris Michaels (Initial Licensed Operator Program Lead).  (Id. ¶ 31.)  LeGrand did not offer excuses for his performance on the Nuclear Generic Fundamentals Examination, and indicated that he had "dropped the ball" but also that he wished to continue in the program.  (Id. ¶ 38.)  LeGrand's failure of this class was cause for concern, because this class was considered to be a "very basic building block" for a Unit Manager, and because PPLS has had "an extremely low number of individuals . . . fail that exam."  (Def. SMF ¶¶ 42-43; Ex. C, Iliadis Dep. 51.)  LeGrand understood that his continuation in the program was subject to the judgment of management.  (Def. SMF ¶ 40.)

Around this time, the plaintiff was also undergoing considerable difficulty in his personal life, particularly because his wife was suffering from certain medical ailments.  (Def. SMF, Ex. A, LeGrand Dep. 120:12-123-:3.)  LeGrand did acknowledge to the Board that his wife was struggling with a medical issue, but he

did not blame his poor performance on her condition.  (Def. SMF ¶ 39.)  The Board did, nevertheless, acknowledge that LeGrand's wife's condition may have impacted his performance on the exam, and recommended that he be permitted to continue in LOC 23, and that his performance in the Systems phase of the class be closely monitored.  (Def. SMF ¶ 45.)  The Systems phase consists of eight separate modules, taught over the course of 12-14 weeks, during which LOC candidates learn to operate the equipment, computers, and all other electronics and instrumentation at the plant. (Def. SMF ¶ 46.)

The Program Review Board also recommended that advanced remediation be initiated for LeGrand in preparation for a re-test of the Nuclear Generic Fundamentals Examination.  Advanced remediation is initiated at any time a pattern of training performance indicates that more than an isolated skill or knowledge deficiency exists, warranting higher-level management attention.  (Def. SMF ¶ 48; Ex. H.)  These recommendations were acted upon by the Tom Iliadis, who as of September 24, 2009, was the General Manager of Operations, as well as a member of the Program Review Board.  (Def. SMF ¶ 49-50.)  Iliadis adopted the Board's recommendations, and permitted LeGrand to continue in LOC 23 subject to performance monitoring and advanced remediation.  (Def. SMF ¶ 51.)

The only other candidate in LOC 23 who failed the Nuclear Generic Fundamentals Examination, John Eisenhauer, received a 72%. Eisenhauer was born in 1975, and was significantly younger than the plaintiff. Eisenhauer was a Reactor Operator license candidate, and not an SRO candidate like LeGrand. (Def. SFM ¶¶ 53-55.) A Program Review Board was convened to review Eisenhauer's performance and continued candidacy, and this Board consisted of the same individuals that made up LeGrand's Program Review Board. (Id. ¶ ¶ 56-57.) During his review, Eisenhauer expressed a desire to continue with the program, but acknowledged that he might not have sufficient time to study because he was building a house, had recently had a child, and was working on his farm. (Id. ¶ 58.) The Program Review Board recommended that Eisenhauer be removed from LOC 23, and Iliadis adopted this recommendation. (Id. ¶ 59.) Eisenhauer was not given the choice of continuing in LOC 23. (Id. ¶ 60.) Unlike LeGrand, however, Eisenhauer was a member of the union, and had the right under an operative collective bargaining agreement, to enroll in a subsequent LOC. (Id. ¶ 61.)

LeGrand continued in LOC 23, but his performance did not improve. LeGrand was scheduled to retake the Nuclear Generic Fundamentals Examination in March 2010, the next time the test was being administered. Meanwhile, on November 18, 2009, LeGrand took a Systems Module 2 Examination and received a 64.4%, a failing

grade, and by far the lowest score of any student in the class.  (Id. ¶¶ 62-66.)  In fact, LeGrand's score was more than 27 points lower than the average score for the rest of the class, excluding LeGrand.  (Id. ¶ 67.)

At the time that LeGrand took and failed this examination, the challenges in his personal life seem to have increased.  His wife had been admitted to the hospital for nine days in connection with her ongoing medical complications.  (Id. ¶ 69.) Approximately three weeks after LeGrand took the test, LeGrand's home was entirely destroyed in a catastrophic fire, resulting in a total loss of the home and all of LeGrand's possessions.  (Id. ¶ 70.)  Following this tragic occurrence, LeGrand was directed to attend to family and outside issues, and LeGrand did not return to work until Monday, December 12, 2009.  (Id. ¶ 71.)  As a result, LeGrand missed the Systems Module 3 Examination, which was administered on December 8, 2009.  (Id. ¶ 73.)  LeGrand also missed several days of Systems Module 4 classroom training. LeGrand's absences were, however, at the direction of Dave Walsh, a member of the Program Review Board and the Assistant Operations Manager.  (Def. SMF, Ex. A, LeGrand Dep. 131:7-16.)

On December 8, 2009, Tom Iliadis sent an email regarding LeGrand, stating that he had "lost too much ground to recover (failed GFEs, failed one systems module exam and he missed today's exam."  (Def. SMF ¶ 75; Ex. M.)  On December 17,

8

2009, PPLS convened a meeting of the Training Review Board to review LeGrand's failure of Systems Module 2 Examination and his corresponding Systems Module course average of 79.3%. LeGrand appeared at this meeting. (Def. SMF ¶ 76.) The Training Review Board was comprised of Art Fitch, Tom Iliadis, Richard Klinefelter (Assistant Operations Manager), Dave Walsh, Harry Fetterman (Supervisor, Operations Training), Chris Michaels (Initial Licensed Operator Program Lead), and Jamie Weiss (LOC 23 Lead). (Id. ¶ 77.) During this meeting, LeGrand again expressed a desire to continue in the program, as well as his belief that he could be successful. (LeGrand Dep. at 132.)

During the meeting, Chris Michaels expressed his concern that LeGrand did not have sufficient time to complete all of the missed training and examinations, and further recommended that LeGrand not be permitted to take the next scheduled examination, Systems 4 module before he had remediated and passed the Systems Module 2 examination, because the review questions on the Systems Module 4 were from Systems Module 2. (Def. SMF ¶ 82.) At least one member of the Training Review Board expressed the view that it was "not realistic" to believe that LeGrand could remediate the Generic Fundamentals and Systems Module 2 examinations, and make up the Systems Module 3 examination, while also preparing for the Systems

Module 4 examination.  (Def. SMF ¶ 84.)  LeGrand indicated that he understood the Board's concerns.  (Id. ¶ 85.)

The Training Review Board thereafter recommended to Iliadis that LeGrand be removed from LOC 23 because "[g]iven his personal situation, the [Board] did not believe it was realistic to expect this candidate to remediate and makeup this training while he was trying to recover from the personal loss of his home."  (Def. SMF ¶ 86; Ex. L; Ex. A, LeGrand Dep. at 145-146; Ex. N.)  On December 17, 2009, Iliadis adopted Training Review Board's recommendation, and LeGrand was removed from LOC 23.  (Def. SMF ¶ 91.)  During his meeting with LeGrand, Iliadis notified him that he was being removed from LOC on account of his "failure to make sufficient progress towards obtaining an SRO license."  (Id. ¶ 92; Ex. O.)  In a follow-up email sent on December 27, 2009, Iliadis cited the Training Review Board's recommendation, LeGrand's personal input to the Board, and LeGrand's performance and test scores as a basis for the removal decision.  (Id. ¶ 96.)

In January 2010, Iliadis also told LeGrand that he would not be permitted to enroll in LOC 24.  (Id. ¶ 104.)  This was significant, because it effectively meant that LeGrand would not be permitted to continue as a Unit Supervisor, since that position required him to obtain an SRO; excluding him from LOC 24 thus ensured that he would not be able to secure a license necessary to his continued employment in that

role.  Notably, LeGrand says that at the time that Iliadis informed him that he would

not be allowed to enroll in LOC 24, he explained to him several times that he did not

believe that LeGrand would be successful, and specifically told him that "training is

a young man's game."  (Id. ¶¶ 102-103; Ex. A, LeGrand Dep. at 150-151.)

Having been removed from LOC 23 and prevented from enrolling in LOC 24,

LeGrand was reassigned to an operations support role on a temporary basis.  This

move did not immediately affect LeGrand's compensation.  LeGrand applied for

numerous non-licensed positions available within PPLS, but received only one offer,

for the position of Performance Improvement Process Lead.  (Def. SMF ¶ 112.)

LeGrand was offered this position on June 1, 2010.  (Def. SMF ¶ 118.)  In this role,

LeGrand would have earned the same base salary that he earned as a Unit Supervisor,

but he elected to turn the offer down because it was not a supervisory job, but was

instead a support role.  (Id. ¶¶ 120-122.)  LeGrand was also concerned that his salary

going forward would be negatively affected by taking the new role.  (Id. ¶ 123.)

LeGrand did not pursue other roles within the PPLS, despite being invited to do so,

again because of his concerns that he would be taken out of a supervisory role, and

because he would earn less money long-term.  (Id. ¶¶ 124-125.)  Iliadis was the

decision maker with respect to one of the positions to which the plaintiff applied,

Assistant Operations Manager, and he decided not to offer this job to LeGrand.  (Def. SMF ¶ 113.)  This job was instead offered to Rich Klinefelter.  (Id. ¶ 114.)

In February 2010, LeGrand received a Performance Planning and Review evaluation in which he received the lowest possible score on the "Goals and Objectives" portion (1 out of 3), and a rating score of 2 on the "Values Behaviors" portion, for an overall score of 1-2.  (Def. SMF ¶ 126.)  The 2010 review indicated that the rating score of 1 for the "Goals and Objectives" portion was based primarily on LeGrand's unsatisfactory performance in LOC 23.  (Id. ¶ 127.)

LeGrand has observed that while at PPLS he was referred as "Pops," "Grandpa," or "Old Man" by younger co-workers who did not have supervisory authority.  (Id. ¶ 129.)  Additionally, LeGrand alleges that he overheard members of the Program Review Board and the Training Review Board make comments to the effect that LeGrand "didn't need to be going through a license class," which he found to be derogatory and apparently age-based.  (Id. ¶¶ 130-131.)  LeGrand has also claimed that Rich Klinefelter, a member of the Training Review Board and an individual that Tom Iliadis consulted with on personnel matters, one time approached him and asked, "Can I borrow your Geritol?  I'm feeling a little tired today." (LeGrand Dep. 189-192.)  LeGrand also attests that Klinefelter told him directly that

he "would not do another LOC class at our age."  (Id. ¶ 134; Pl. Counterstatement at ¶ 134.)

On June 21, 2010, PPLS terminated LeGrand's employment.  (Def. SMF ¶ 137.)  Tom Iliadis made the decision to terminate LeGrand's employment, in consultation with a member of PPLS' human relations department and the plant manager.  (Id. ¶ 138.)  Iliadis stated that the decision to terminate LeGrand's employment was based on his "inability to meet the conditions of his employment by obtaining a[n] SRO license."  (Id. ¶ 141; Ex. I, Iliadis Aff. ¶ 8.)  The termination notice also recited that LeGrand had been removed from LOC 23, but had been encouraged to apply for other positions, but had been rejected from five such jobs. (Id.)

Evidence indicates that there was only one other external hire, other than LeGrand, whose continued employment by PPLS as a Unit Supervisor was contingent on obtaining an SRO; all other license candidates were already employed by PPLS and their continued employment was not conditional.  (Id. ¶¶ 147-148.)  That other comparator scored a 97.8% on his Systems Module 2 exam, and successfully completed LOC 23, but ultimately failed his SRO certification exam given by the NRC, and he resigned shortly thereafter.  (Id. ¶¶ 150-151.)

13

Iliadis adopted all of the Planning Review Board's and the Training Review Board's recommendations with respect to candidate removals from LOC 23 and LOC 24. (Id. ¶¶ 154-155.)

On August 30, 2010, the plaintiff filed a charge of discrimination with the EEOC and the Pennsylvania Human Relations Commission, asserting claims of age discrimination. After receiving a right-to-sue letter from the EEOC, the plaintiff initiated this litigation by filing a complaint on February 7, 2012. (Doc. 1.) The defendant filed its motion for summary judgment on December 4, 2013 (Doc. 28.), and after the motion was fully briefed it was referred to the undersigned on November 12, 2014, for purposes of preparing a report and recommendation.

## III.   STANDARD OF REVIEW

PPLS has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v.

Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if

the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an

unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).   In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

## IV.   DISCUSSION

The plaintiff has brought claims for age discrimination under both the ADEA and the PHRA, alleging that PPLS unlawfully terminated his employment because it believed he was too old to train to become an SRO, and, therefore, prevented him from participating in the LOC 24 in order to obtain his SRO license.  The decision to

remove LeGrand from LOC 23, and the refusal to allow him to enroll in LOC 24, in effect prevented LeGrand from maintaining his employment as a Unit Supervisor, and it is undisputed that he lost this job and was shortly thereafter terminated from his employment with PPLS.   LeGrand argues in this case that these employment decisions, and his resultant loss of his position as a Unit Supervisor, constitute unlawful discrimination on the basis of age.   PPLS maintains that LeGrand lacks direct evidence of age-based discrimination, and insists that the record compels a finding that its decisions with respect to LeGrand's participating in the licensing classes were not influenced by his age, but were instead driven by his objectively unsatisfactory performance.

The legal standards governing claims of age-based discrimination under the ADEA and the PHRA are substantially the same, and for simplicity these laws will be referred to jointly as the ADEA.[3]   The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise

---

[3] The Third Circuit has instructed that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)).   There is nothing substantially different between the PHRA and the ADEA, and, therefore, we "will interpret the implicated provisions of the ADEA and PHRA as applying identically in this case and as being governed by the same set of decisional law." Id.

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an intentional age discrimination claim under either the ADEA or the "analogous provision" of the PHRA, Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998), a plaintiff must prove that his age " 'actually motivated' " or " 'had a determinative influence on' " the employer's adverse employment decision. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). The Supreme Court has more recently clarified that the "ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 176 (2009) (citing Hazen Paper Co., 507 U.S. at 610). Accordingly, in order "[t]o establish a disparate treatment under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. (citations omitted).

A plaintiff can meet this burden (1) by presenting direct evidence of discrimination, see Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), or (2) by presenting indirect evidence of discrimination that satisfies the traditional three-step

framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 793 (1973).[4]  <u>See</u> <u>Fasold</u>,

409 F.3d at 184; <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 337-38 (3d Cir. 2002); <u>Keller</u>

<u>v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101 (3d Cir. 1997) (en banc).

There is no "heightened evidentiary requirement" for a plaintiff to satisfy his

burden of persuasion through the use of direct evidence, as opposed to circumstantial

evidence.  <u>Gross</u>, 557 U.S. at 177 n.4.  Accordingly, "[a] plaintiff must prove by a

preponderance of the evidence (which may be direct or circumstantial), that age was

---

[4] The defendant suggests that this is not a "direct evidence" case, and asserts that in <u>Gross</u> the Supreme Court has held that a plaintiff prosecuting an ADEA claim cannot do so under a so-called "mixed motives" theory.  The defendant's assertions in this regard may be legally correct, but are inapposite to this case and, in any event, <u>Gross</u> did not alter a plaintiff's ability to prove a discrimination case through direct evidence.  It is true, and uncontested, that in <u>Gross</u> the Supreme Court held that in disparate-treatment claims based upon age, the plaintiff retains the burden of persuasion at all stages of the proceedings, and to prevail must prove that age was the "but for" cause of the challenged adverse employment action.  The plaintiff acknowledges this holding, but also correctly notes that nothing in <u>Gross</u> altered what form that proof of discrimination must take, and did not otherwise change the summary judgment standard with respect to a direct evidence claim.  What <u>Gross</u> did do was to make clear that in ADEA cases, the burden-shifting framework established in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) in Title VII cases does not apply to ADEA claims.
    The defendant seems to be arguing that the Court should disregard the direct evidence in this case, which it discounts in any event, and force the plaintiff to proceed under a <u>McDonnell Douglas</u> theory of proof, which is the standard used when a plaintiff lacks directs evidence and is relying solely on circumstantial evidence.  Nothing in <u>Gross</u> mandates this approach in a case where there is some direct evidence of discrimination.  In this case, there is direct evidence of age-based discrimination, albeit direct evidence which is hotly disputed,  and it would be error for the Court to ignore it.

the 'but for' cause of the challenged employer decision." Id. at 177. But where there is direct evidence of age discrimination at the summary judgment stage, it is unnecessary even to view the case through the McDonnell Douglas burden-shifting framework "because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case." Seretti v. Morrow Ford Lincoln Mercury, Inc., Civ. A. No. 10-1227, 2012 WL 933058, *3 (W.D. Pa. Mar. 19, 2012) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.")); see also Fakete v. Aetna, Inc., 308 F.3d 335, 338-39 (3d Cir. 2002) (where direct evidence of discrimination is presented, a court "need not consider whether that claim may proceed under a McDonnell Douglas theory.").

The United States Court of Appeals for the Third Circuit has defined "direct evidence" to be evidence that is "sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision." Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 512 (3d Cir. 2004). "Such evidence 'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it; when he made the

challenged employment decision." <u>Fakete</u>, 308 F.3d at 338-39 (quoting <u>Starceski v.</u>

<u>Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1097 (3d Cir. 1995)).[5]

The Third Circuit has explained that in discrimination cases, certain statements

may be relevant to a claim of workplace discrimination when there are biased remarks

in the record.   These considerations may include "the speaker's position in the

organization, the content and purpose of the statement, and the 'temporal connection

between the statement and the challenged employment action.'" <u>Hodczak v. Latrobe</u>

<u>Speciality Steel Corp.</u>, 451 F. App'x 238, 241(3d Cir. 2011) (discussing age-based

---

[5] Under the <u>McDonnell Douglas</u> paradigm, by contrast, a plaintiff proceeds without direct evidence to support a discrimination claim.  To do so, a claimant must first establish a *prima facie* case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  <u>Storey v. Burns Int'l Sec. Servs.</u>, 390 F.3d 760, 764 n.11 (3d Cir. 2004).  If the employer articulates a legitimate reason, the claimant must then proffer evidence that would be sufficient for a reasonable fact finder to conclude by a preponderance of the evidence that the employer's proffered reasons are false or pretextual.  <u>Sarullo v. United States Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam).  Although the burden of production shifts during the course of the <u>McDonnell Douglas</u> test, " 'the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee].' " <u>Williams v. Phila. Hous. Auth. Police Dep't</u> , 380 F.3d 751, 759 n.3 (3d Cir. 2004) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

remarks in the context of analyzing whether the plaintiff had made a sufficient showing of pretext under a <u>McDonnell Douglas</u> framework).[6]

In this case, the plaintiff maintains that he has made out a direct case of age discrimination, and that the record contains evidence that Tom Iliadis, the ultimate decision maker, specifically noted that the plaintiff's age bore on the decision to deny him admission to LOC 24.  Specifically, the plaintiff has attested that in January 2010, immediately after Iliadis informed him that he was being removed from LOC 23 and at the time he explained that he would be denied admission to LOC 24, he told the plaintiff, "I do not think that you'll be successful.  I think that training is a young man's game."  (LeGrand Dep. 180:21-181:17; 58:11-59:4.)  LeGrand has also cited to evidence showing that more than a week before the Training Review Board met to discuss LeGrand's continuing in LOC 23, Iliadis had already reported to two of his

---

[6] In <u>Hodczak</u>, the court of appeals acknowledged several isolated remarks made by employees that apparently touched upon the plaintiff's age, and may have been suggestive that age was a characteristic that was at times discussed. However, the court deemed these to have been "stray remarks" that were entitled to minimal weight in that case because the statements were "temporally remote from the decision to discharge Appellants, and [were] completely unrelated to the investigation regarding Appellants' violation of the EC policy."  451 F. App'x at 241.  It was for that reason that the comments were deemed to have been entitled to little evidentiary weight, and not because such comments would always be disregarded in an age-based discrimination case where a plaintiff presents evidence that a decisionmaker referred specifically to a plaintiff's advancing age as a reason for making an adverse employment decision.

superiors that he believed that LeGrand "had lost too much ground to recover," and that he was recommending that he be moved to a non-licensed position. (Iliadis Dep. at 12:5-13:25; 84:5-17.) The plaintiff argues this may further suggest that Iliadis had made up his mind regarding LeGrand, and should undermine his argument that he was merely following the Board's recommendation in removing LeGrand from LOC 23 and in preventing him from enrolling in LOC 24. Notably, at 55, LeGrand was the oldest member of LOC 23, and would have been the oldest member of LOC 24 by four years. The other member of LOC 23 who was failing, and who was later granted admission into LOC 24 had scored even more poorly than LeGrand, and was 12 years younger than him.[7]

---

[7] As the defendant emphasizes, this employee was also a member of a union and had a right under a collective bargaining agreement to re-enroll. We recognize that these circumstances may distinguish these two employees, but do not agree that this distinction entirely forecloses the plaintiff's claim, or vitiates the probative value of this evidence. It is also undisputed that Iliadis had discretion to permit LeGrand to enroll in LOC 24 and denied him that opportunity, which the plaintiff alleges was done at the same time Iliadis told him that he didn't believe LeGrand would be successful since "training is a young man's game." This evidence gives rise to a fact issue regarding the basis for the defendant's adverse employment decision with respect to LeGrand that should not be resolved by the court on summary judgment, both as direct evidence of age-based discrimination, and also when combined with other circumstantial proof, as evidence that could be relevant to dispute any proffered legitimate reason for the adverse action that the defendant may argue at trial.

In addition, the plaintiff has bolstered this evidence of age-based discrimination by pointing to evidence that at least one other member of the LOC 23 Training Review Board had made multiple comments referring to the plaintiff's age in a way that is at least suggestive it may have influenced the ultimate decision to discontinue plaintiff's participation, and effectively to end his employment as a Unit Supervisor.  Thus, the plaintiff claims that Richard Klinefelter once asked to borrow the plaintiff's Geritol because he was feeling tired, and on another occasion inquired into why the plaintiff was coming to the Susquehanna Power Station to participate in a licensing class, commenting to the plaintiff that he "would not do another LOC class at [their] age."[8]  (LeGrand Dep. at 189:1-25; 190:23-25; 191:9-15; 191:24-

---

[8] Klinefelter was born in January 1957 and is approximately three years younger than the plaintiff.  (Pl. Counterstatement of Facts, ¶ 6; LeGrand Dep. at 11:19-20; Def. Ex. G.)  The defendant argues that Klinefelter's remarks were made in jest, were mere stray comments that cannot be attributable to the ultimate decisionmaker, Iliadis, and were made in a context that is unrelated to the decisionmaking process.  However, this argument in our view simply defines a disputed issue of fact on a question that is central to this litigation.  In this case, the plaintiff is not seeking to rely solely upon these comments made by Klinefelter, who was a member of the Board that reviewed the plaintiff's performance in LOC 23 and gave input on his candidacy, but has presented them to show other evidence in the record that may be raise an inference that age was a factor that may have influenced a Board member, something that may be relevant since the plaintiff has also shown direct evidence that his age was a factor identified as a reason for not allowing him to enroll in LOC 24.  Moreover, the evidence indicates that Iliadis, the Board member who ultimately decided that plaintiff would be removed from LOC 23 and not permitted to enroll in LOC 24, regularly conferred with Klinefelter and the Board about LOC enrollment

192:16.)  Thomas Iliadis and Rich Klinefelter were both members of the Training

Review Board.  (Def. Statement of Material Facts, Ex. L.)  The Training Review

Board recommended that LeGrand be removed from LOC 23, and the plaintiff

maintains that Iliadis was the ultimate decision maker who decided that the plaintiff

would be removed from the training class, and that he would not be permitted to

enroll in LOC 24.  (Pl. Counterstatement ¶ 7-10; Iliadis Dep. 42:2-43:13.)  Iliadis

testified during his deposition that he had discretion as to whether to admit the

plaintiff to the LOC 24 or deny him admission, and he further testified that in making

this decision, he received input from members of the review boards that were

conducted during Mr. LeGrand's participation in LOC 23.  (Iliadis Dep. 42:11-43:6.)

Notably, Iliadis stated that in making a decision about which applicants to enroll in

licensing classes, he typically discussed the matter with Rich Klinefelter and two

others.  (Iliadis Dep. 68:5-19.)  Thus, the plaintiff has alleged that he received age-

based comments from two of the corporate decisionmakers in this case at the time that

---

decisions. It is submitted, therefore, that it would be improper entirely to disregard
these comments, or to view them as irrelevant, and it is clear that the plaintiff is
not relying exclusively on what may have been isolated comments by a single
board member, or endeavoring to impute these comments to other decisionmakers
as the only direct evidence in support of his claims.  This evidence is instead
offered in addition to the limited direct evidence that the plaintiff testified to in his
deposition, and may show that the plaintiff's age was a factor that inspired at least
one other board member to consider the plaintiff's age in connection with the
work he was hired to perform.

a decision was made not to permit LeGrand to continue this essential training. Further, Iliadis was also the individual who terminated the plaintiff's employment in June 2010. (Pl. Counterstatement of Facts ¶ 16; PPLS' Response to Plaintiff's Interrogatory No. 5, Def. Ex. J.)

Upon consideration of this evidence in the record, we are constrained to find that it sufficiently gives rise to a dispute as to whether the plaintiff's age was the reason that Iliadis made the decisions that directly and adversely affected the plaintiff's employment. Although the evidence is limited, it is evidence of a statement by an ultimate decision maker, made contemporaneously with adverse employment decisions, that directly refers to the plaintiff's age as a reason he was being denied admission to LOC 24. In other cases where similar evidence has been adduced, courts have found that contemporaneous statements tying the adverse employment decision to consideration of the plaintiff's age was sufficient direct evidence to support a discrimination claim. See, e.g., Seretti v. Morrow Ford Lincoln Mercury, Inc., Civ. A. No. 10-1227, 2012 WL 933058, *4 (W.D. Pa. Mar. 19, 2012) (evidence that the decision-maker informed the plaintiff on the day of his termination that the plaintiff's "age had finally caught up to him."). The evidence is probative because it was allegedly made by the individual who was ultimately responsible for the adverse decision, and who had discretion with respect to that decision. Walden

v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3d Cir. 1997) (biased remarks made by individuals within the chain of decision-makers vested with the authority to discharge are more probative of discrimination than those made by non-decision makers); cf. Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 501 (7th Cir. 2010) (direct evidence of discrimination can be "near admissions by the employer that its decisions were based on a proscribed criterion (e.g., 'You're too old to work here.').").  Additionally, "a close temporal connection between the remark and the challenged employment action will be far more probative of discrimination than a remark made months before the challenged action." Seretti, 2012 WL 933058, at *4. All of these relevant factors are present here.

There is no question but that the defendants have marshaled considerable contrary evidence to show that the plaintiff was the worst performing student in LOC 23, and that there would have been substantial reasons to doubt his ability to succeed in LOC 24 and, therefore, to prevent him from continuing as a Unit Supervisor. Nevertheless, this direct evidence, bolstered by other circumstantial evidence showing that a younger candidate who was also failing LOC 23 was permitted to enroll in LOC 24, that another Board member with whom Iliadis regularly conferred had made multiple comments regarding the plaintiff's age and whether it made sense to be entering into the licensing training at his age, is sufficient to highlight a dispute

in the record that should permit the plaintiff to proceed past summary judgment.  It is also undisputed that Iliadis had the discretion to permit LeGrand to enroll in LOC 24, but decided against allowing him to do so.[9]

In light of the evidence in the record discussed above, and mindful of both the disputed issues of fact regarding the circumstances surrounding the adverse employment decisions being challenged in this case and our obligation to construe the evidence in a light most favorable to the plaintiff, we recommend that the defendant's motion for summary judgment be denied.

## V.   **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the defendant's motion for summary judgment be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

---

[9]  Moreover, although the evidence adduced, while limited, is sufficient direct evidence in support of the plaintiff's claim, and, therefore, that it is unnecessary to view this case through the prism of McDonnell Douglas, it may also be considered as circumstantial evidence that could support an inference that the plaintiff's age was the real reason for the adverse employment decision, notwithstanding the legitimate, non-discriminatory bases that have been proffered. See, e.g., Kodish, 604 F.3d at 501 ("'Direct' proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (e.g., 'You're too old to work here.'), but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences.") (quoting Atanus v. Perry, 520 F.3d 662, 671 (7th Cir. 2008)).

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23rd day of March, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge